ACTIVOX, INC., Plaintiff,

v.

ENVIROTECH CORPORATION and
DHV Raadgevend Enginieurs
Bureau B.V., Defendants.

No. 81 Civ. 0075 (RWS).

United States District Court,
S. D. New York.

Sept. 15, 1981.

Miskin & Sutton, New York City, for plaintiff; Paul J. Sutton, Barry G. Magidoff, New York City, of counsel.

Dewey, Ballantine, Bushby, Palmer & Wood, New York City, for defendants; Thomas V. Heyman, New York City, of counsel.

## OPINION

SWEET, District Judge.

Defendants Envirotech Corporation ("Envirotech") and DHV Raadgevend Enginieurs Bureau B.V. ("DHV") have moved pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(2) to dismiss the complaint in this declaratory judgment action by plaintiff Activox, Inc. ("Activox") seeking to declare certain patents invalid. Envirotech has also moved for costs pursuant to Fed.R.Civ.P. 41. For the reasons stated below, both motions will be granted.

The long and the short of the procedural maneuvering between the parties, about to be described, is that Activox seeks to invali-

date the DHV patent rights in the least expensive and most expeditious fashion here in this district. Unfortunately for Activox, the jurisdictional requirements have not been met here, because DHV, an indispensable party to this action, is not found in this district.

Almost all the facts which control this decision are conceded. Activox, a New Jersey corporation, has offices in New York, and in 1976 entered into a contract with Amstar Corporation ("Amstar") to perform certain services in the design and construction of a waste water treatment facility at Chalmette, Louisiana. According to Activox, the Amstar facility was designed and constructed pursuant to Activox patent rights. According to Envirotech, a Delaware corporation with offices in California, the design and construction of the Amstar facility infringed a patent owned by DHV, U.S. Patent No. 3,510,110, referred to by the parties as "the '110" or "the Klein '110" patent.

DHV, a Netherlands corporation with offices in that country, is the assignee of the Klein '110 and joined with Envirotech to file a patent infringement action early in 1979 against Amstar in the United States District Court for the Eastern District of Louisiana. About five months later Activox commenced an action in this district against Envirotech and DHV seeking a declaratory judgment to invalidate the Klein '110. Motions to stay and to transfer the New York action were made and during their pendency Activox voluntarily dismissed its action, the district court permitting such dismissal on January 10, 1980 despite the objection of Envirotech and DHV. By June 5, 1980 the Louisiana action was settled, and Amstar paid $36,000 for a full paid-up license from Envirotech and DHV.

Thereafter, in October, 1980, Amstar initiated a state court action against Activox alleging a breach of express and implied warranties. The action was initiated in January, 1981.

DHV, the owner of the Klein '110 patent, has no offices in the United States. Envi-rotech is a sublicensee in the United States with no control or ownership rights in the patent. The '110 patent is directed to an installation for the purification of sewage in oxidation ditch plants. Such plants requiring design and construction including aerator drives, pumps, clarifiers, valves, tanks and other equipment, have been constructed in Kentucky employing the '110 patent. Activox has sought to enter this field of endeavor and its 1979 action against Envirotech and DHV in this district was reported in trade publications.

Activox now alleges that counsel for Envirotech has stated that facilities such as the Amstar facility violate the '110 patents and that Activox is presently seeking orders for similar waste water treatment facilities from three particular customers though no such orders have been obtained. In one instance an inquiry was made concerning the prior litigation with Envirotech; in another, the order has been refused by a public authority ostensibly because of the risk of patent litigation. In any case, Activox does not at this moment have any contract under its patent rights, for the construction of waste facilities.

DHV has had no contacts with New York, except for a one-day meeting here following a one-day meeting in New Jersey attended by its representatives in connection with the settlement of the Louisiana litigation. Other than such meetings and the holding of the '110 patent and the collection of royalties therefrom, there is no U.S. activity claimed on behalf of DHV. Service on DHV was obtained by mail addressed to and received at its office in the Netherlands.

■ Although the question is close, the action will not be dismissed for lack of a case or controversy. The requirements in an action of this nature are twofold and well described by the Honorable Morris E. Lasker in *Mine Safety Appliance Co. v. Energetics Science, Inc.*, 416 F.Supp. 530 (S.D.N.Y.1976). The first requirement, that the patentee must have charged the plaintiff with infringement or at least threatened an infringement suit, is satisfied here

by the Louisiana litigation. The second requirement is that the plaintiff must have produced or prepared to produce the accused article. Here Judge Lasker appropriately cited *Muller v. Olin Mathieson Chemical Corp.*, 404 F.2d 501, 504 (2d Cir. 1968).

In both *Muller* and *Mine Safety* the alleged infringement related to an article which had been produced and was in being, ready for sale. Here the plaintiff has a process, apparently somewhat complex, involving readily obtainable components, pumps, tanks, valves, etc. According to Envirotech, each waste water treatment facility must be designed as one of a kind given the location and particular requirements of the customer. Activox does not dispute this characterization and does not have presently in production any facility employing its patents. However, Activox has designed such a plant, the Amstar facility, and is prepared to design a successor, if an order can be obtained.

Obviously what is at stake is a determination of the forum in which the Activox challenge to DHV patent will be heard. Should Activox indemnify its licensee and thus obtain an order, it will be subject to litigation in a forum not of its choosing and under conditions which might prove substantially more expensive. Hence, this action. Since Activox has produced a facility alleged to be infringing and is prepared to produce a second such facility the requirements of a case or controversy have been met, *see Blackman v. Hadron, Inc.*, 450 F.2d 781, 783 (2d Cir. 1971), and were DHV subject to this jurisdiction, the issue could be resolved here. In view of this ruling, however, it appears that if Activox intends to proceed by litigation rather than by indemnity, it will have to do so in the District of Columbia.

█ It is conceded by all that an action against DHV to invalidate its patent would lie in the District of Columbia pursuant to § 293 of Title 35. However, the only real contact with New York, the above-mentioned one-time meeting in connection with the settlement of the Louisiana litigation, does not provide the minimal contact to

provide jurisdiction here under *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1957), and *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). *See McKee Electric Co. v. Rauland-Borg Corp.*, 20 N.Y.2d 377, 283 N.Y.S.2d 34, 229 N.E.2d 604 (1967), N.Y.C.P.L.R. § 302. Therefore DHV is entitled to a dismissal of the complaint.

Activox seeks to avoid the conclusion just reached by reliance upon *Cryomedics, Inc. v. Spembly, Ltd.*, 397 F.Supp. 287 (D.Conn. 1975) decided by the Honorable Jon O. Newman. That case enunciated a "national contacts" analysis as a substitute for the classical minimum contacts test, *see International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), in determining whether a court has personal jurisdiction over an alien defendant on a federally created cause of action. *See generally Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1237–39 (6th Cir. 1981). *Cryomedics* is factually distinguishable because of the tangible nature of the products there involved as opposed to the design patents at issue here, and the total absence of any activities of DHV with New York upon which DHV could foresee that it would be subject to this jurisdiction.

Further, the national contacts test there enunciated does not commend itself to this court in view of the Congressional solution to the non-resident patentee problem set forth in § 293 of Title 35. *See Gerber Scientific Instrument Co. v. Barr & Stround Ltd.*, 383 F.Supp. 1238 (D.Conn.1973). It is in my view unrealistic to suggest that a non-resident patentee is subject to § 293 jurisdiction only if there are no contacts relating to the patent in the United States other than the mere holding of the patent. Putting it differently, application of a national contacts test, based on the operation of a licensee, as was the case in *Cryomedics*, would render § 293 largely useless. The decision of the Court of Appeals in *Leasco Data Processing Corp. v. Maxwell*, 468 F.2d 1326, 1339–44 (2d Cir. 1972), does not dictate a contrary result herein.

In addition, the use of the forum non conveniens doctrine as an expression of due process in such cases, *Cryomedics,. supra,* at 290, is a difficult standard to apply. For these reasons and those set forth in *Agtronic Inc. v. Frank Pavious, Ltd.,* 70 F.R.D. 393, 399–401 (D.Neb.1976) I decline to adopt the test set forth in *Cryomedics. See also DeJames v. Magnificenie Carriers, Inc.,* 654 F.2d 280, at n.3 (3d Cir. July 9, 1981) (Seitz, J.); *Wells Fargo & Co. v. Wells Fargo Express Co.,* 556 F.2d 406, 416–18 (9th Cir. 1977); *Ingersoll Milling Machine Co. v. J. E. Bernard & Co.,* 508 F.Supp. 907, 910 (N.D. Ill.1981); *Harem-Christensen Corp. v. M. S. Frigo Harmony,* 477 F.Supp. 694, 697 n.1 (S.D.N.Y.1979); *Irrigation & Power Equipment, Inc. v. Machinery Specialty Pty. Ltd.,* 199 U.S.P.Q. 627, 629–30 n.4 (D.D.C.1976); *Graham Engineering Corp. v. Kemp Products, Ltd.,* 418 F.Supp. 915, 919–20 & n.3 (N.D.Ohio 1976).

■ There is no showing that Envirotech is authorized to defend or prosecute infringement claims on behalf of DHV. A review of the Envirotech license indicates that all enforcement rights and obligations remain with the patent holder. Thus DHV, whose patent rights would be affected, is an indispensable party to an action for declaratory judgment against Envirotech to invalidate the '110 patent. *See Hill & Range Songs, Inc. v. Fred Rose Music, Inc.,* 58 F.R.D. 185, 190 (S.D.N.Y.1972). I therefore dismiss the complaint against Envirotech, in the exercise of discretion granted to district courts in these matters. Fed.R.Civ.P. 19(b). *Upshaw v. Equitable Life Assurance Society,* 85 F.R.D. 674, 678–79 (E.D.Ark.1980); *Donohue v. Board of Education of State of New York,* 435 F.Supp. 957, 965 (E.D.N.Y. 1976).

■ There remains then the question of the voluntary dismissal by Activox of its 1979 action in this district which sought the same relief as is requested by the instant complaint. That dismissal was opposed by Envirotech and had it not been granted, it is possible that the underlying patent dispute might now have been resolved. Whatever the strategy of Activox may have been

in dismissing its prior action, by virtue of Fed.R.Civ.P. 41(d) it is now subject to "the payment of costs of the action previously dismissed." In the event that the parties are unable to agree on the amount of such costs, the court will determine the amount upon motion by the defendants to be made or waived within twenty (20) days, and all proceedings in this action will be stayed pending payment of such costs.

IT IS SO ORDERED.