**Irwin A. ZUCKER, Plaintiff,**

v.

**Stanley KATZ, et al., Defendants.**

**No. 87 CIV. 7595 (SWK).**

United States District Court,
S.D. New York.

March 1, 1989.

Stephen N. Dratch, Greenberg, Margolis, Ziegler, Schwartz, Dratch, Fishman, Franzblau & Falkin, Roseland, N.J., for plaintiff.

Leslie Gordon Fagen, Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for defendants.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

This action arises from an alleged promise to pay plaintiff ten percent of the stock in the nine defendant Archer corporations. The defendants are Stanley Katz, the sole owner of the stock in the Archer Companies at the time of the alleged agreement, Judith Katz, the secretary of all the named defendant corporations, and the nine Archer Companies. Plaintiff's complaint enumerates twenty claims, including breach of contract, federal securities and common law fraud, intentional or reckless misrepresentation, intentional infliction of emotional distress, prima facie tort and several other state law claims. Presently before this Court is defendants' motion pursuant to 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the complaint, and for costs under Federal Rule of Civil Procedure 41(d). For the reasons stated below, defendants' motion to dismiss is granted in part and denied in part. Defendants' motion for costs of a similar prior action under Rule 41(d) is granted, and this action is stayed until payment of such costs is made.

### Background

Plaintiff Irwin Zucker was hired by the Archer Companies in October 1966, and later became Vice President of each of the Archer Companies. According to the complaint,[1] plaintiff became President of defendant Can Carriers, Inc. ["Can Carriers"] in approximately 1982, and later, in April 1983, he became President of defendant Archer Services. The gravamen of plaintiff's action is an oral promise allegedly made by defendant Stanley Katz—the Chairman of the Board and sole stockholder of the defendant corporations—to pay plaintiff ten percent of the shares of stock outstanding in "each and all of the Archer Companies," at the rate of one percent per year for ten years. Complaint ¶ 21. This promise was allegedly made "in or about 1979" after thirteen years of employment by the Archer Companies. *Id.* Plaintiff alleges that this oral promise constituted

additional compensation and consideration for agreeing to remain in defendants' employ.

Plaintiff never received shares, or any indicia of stock ownership, in the Archer Companies pursuant to this alleged agreement, or any other means. He contends that he made several inquiries regarding this agreement over the next eight years to which defendants suggested other methods of compensation, including a stock appreciation plan. Plaintiff asserts that he refused these proposals and demanded payment of the full ten percent, not one percent per year over ten years as was previously agreed. In response, plaintiff alleges that Katz then agreed "in or about 1981" to give plaintiff "his full 10 percent at once, rather than one percent per year for 10 years." *Id.* ¶ 26. Plaintiff alleges that the defendants continued to represent "every few months" that he would receive his stock. *Id.* ¶ 27. Furthermore, Mr. Zucker claimed that his interest in the stock under the alleged agreement was recognized in informal writings. *Id.* ¶ 28. Even though plaintiff received no shares, he alleges that defendants represented that he had been issued ten percent of the shares in at least some of the Archer Companies. Finally, plaintiff claims that the defendants represented "in or about December 1986" that he would receive the stock as soon as in-house counsel completed drafting a formal stock agreement. *Id.* ¶ 29.

During the period of these continued promises, the plaintiff also alleges that the involvement of outside consultants in the management of the Archer Companies grew, apparently displacing and usurping his authority. Plaintiff allegedly objected to their burgeoning responsibilities within the company as "demeaning and embarrassing to Zucker." *Id.* ¶ 31. Defendant Katz disagreed with plaintiff over the propriety of delegating certain managerial responsibilities to consultants, and the plaintiff resigned.

At a pre-trial conference held on March 18, 1988, this Court granted leave to file a second amended complaint. Defendants

1. The Court has culled the facts upon which it relies from the complaint.

now move under Rule 41 of the Federal Rules of Civil Procedure for costs incurred in attempting to settle and in defense of the present complaint. The defendants also move to dismiss the complaint under Rule 12(b)(6), arguing that the fraud-based claims are not pleaded with sufficient particularity under Rule 9(b) of the Federal Rules of Civil Procedure, that no enforceable contract for the sale of securities has been pleaded, and that the complaint fails to state a claim in regard to the remaining state law actions.

### Discussion

#### Failure to Plead Fraud with Particularity

Defendants move for dismissal of the misrepresentation claims—in particular counts one, five through eight, and thirteen through seventeen—for failure to comply with Rule 9(b), which requires that:

> In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

Fed.R.Civ.P. 9(b). This rule exists to protect defendants from frivolous suits and to provide defendants in a fraud action "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *LaRoe v. Elms Securities Corporation,* 700 F.Supp. 688, 694 (S.D.N.Y.1988) (quoting *Ross v. A.H. Robins,* 607 F.2d 545, 557 (2d Cir.1979), *cert. denied,* 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980)). In order to satisfy Rule 9(b), allegations of fraud must specify time, place, speaker and content of the alleged misrepresentations. *DiVittorio v. Equidyne Extractive Industries, Inc.,* 822 F.2d 1242, 1247 (2d Cir. 1987).

Defendants first argue that the complaint does not adequately identify facts supporting scienter. They argue that the complaint fails to state "a single factual assertion to suggest that the supposed promise was false when made." Defendants Memorandum in Support at 10. Additionally, defendants contend that plaintiff has failed to make specific allegations of fraud as to the time, place and substance of the misrepresentations. For the purposes of this motion, the Court considers only the complaint.

This Circuit has recognized that " 'great specificity [is] not required with respect to ... allegations of scienter.' The absence of a requirement that scienter be alleged with 'great specificity' is based on the premise that a plaintiff realistically cannot be expected to plead a defendant's actual state of mind." *Connecticut Nat. Bank v. Fluor Corp.,* 808 F.2d 957, 962 (2nd Cir. 1987) (citations omitted). On the other hand, plaintiff must allege facts from which scienter can be inferred, and this Court recognizes that the mere allegation that defendants did not intend to honor the contract at issue does not alone create a basis for alleging fraud. *Murray v. Xerox Corp.,* 811 F.2d 118, 122 (2nd Cir.1987) (mere failure to perform a single promise does not plead scienter in case where condition precedent to promise was not satisfied and promisor was no longer in position to perform); *see also Value Time v. Windsor Toys,* 700 F.Supp. 6, 7 (S.D.N.Y.1988).

Plaintiff further alleges that defendants' acts were in furtherance of a fraudulent scheme to induce Zucker "to continue his employment by: (a) promising him 10 percent of the shares of the Corporations; (b) delaying the formal issuance of Zucker's shares in the corporations; and (c) repeatedly making knowing or reckless false representations that the transaction would occur in the near future." Complaint ¶ 35. Plaintiff alleges that defendants never intended to honor their repeated promises to transfer the shares, and only made such representations to encourage plaintiff to remain in their employ until plaintiff could be "squeezed" out of his position. *Id.* Finally, the plaintiff has alleged that he and Katz had been friends for a long time, thus making his reliance on Katz's continued representations a plausible contention of fact. *See* Complaint ¶ 74.

In *Value Time,* this Court dismissed a counterclaim for fraud based solely on a breach of contract and the allegation that the plaintiff had no intention of performing at the time of contracting. 700 F.Supp. at

7. In contrast, this Court finds that the plaintiff here does plead facts, other than the mere allegation of intent, that tend to support the inference that defendants had no intention to perform the alleged contract, either at the time the first promise allegedly was made "in or around 1979," or at the time of later alleged misrepresentations by defendants. This Circuit has held that "making a specific promise to perform a particular act in the future while secretly intending not to perform that act may violate Section 10(b)" as long as it is more than merely a generalized promise to act as a faithful fiduciary. *Pross v. Katz*, 784 F.2d 455, 457–58 (2d Cir.1986). Thus, plaintiff's allegation that defendant never intended to perform may satisfy the scienter pleading requirements as long as the allegation is plausible considering the circumstances pleaded. *See Luce v. Edelstein*, 802 F.2d 49, 56 (2d Cir.1986) (plausible allegation that defendants secretly intended to dishonor agreement adequately states scienter in 10(b)(5) claim). After considering the entire complaint, the series of alleged misrepresentations, the allegation that defendants acted with intent to squeeze him out, and the apparently long-standing business and personal relationship between Zucker and Katz, this Court concludes that the plaintiff has plead scienter.

■ On the other hand, the Court is persuaded by defendants' argument that plaintiff did not plead fraud with sufficient particularity in regard to the time, place and manner of the alleged misrepresentations. *See, e.g., Billard v. Rockwell*, 683 F.2d 51, 56–57 (2d Cir.1982) (strictly construes Rule 9(b), requiring a more particular complaint in securities fraud action involving tender offer). The heightened particularity requirements of Rule 9(b) demand that the complaint put defendants on "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Ross, supra,* 607 F.2d at 557.

Although defendants may have fair notice as to the general nature of plaintiff's complaint, the complaint lacks a sufficiently specific description of the grounds upon which it rests. Plaintiff has identified the individual making the alleged misrepresentation in many instances, but has failed to describe sufficiently the time, place and content of these conversations. The complaint is particularly deficient in specifying the time of the several purported misrepresentations, as it merely specifies the approximate year in all but one instance, in which it specifies the approximate month. If this plaintiff had had irregular and infrequent contact with defendants, the mere specification of the approximate year of a misrepresentation might have sufficed, as the parties would have had few occasions to make such a misrepresentation. The plaintiff here, however, was employed full-time for defendants and was a long-time friend of Mr. Katz. As such, Mr. Zucker and Mr. Katz could be expected to have had numerous social and business discussions each month, let alone each year. Consequently, specification of a misrepresentation by its approximate year fails to provide the defendants with fair notice of the grounds for the fraud-based claims. Plaintiff's claims actually based in fraud— one, five and eight—are dismissed without prejudice.

■ Defendant further argues that Rule 9(b) applies to counts six and seven and thirteen through eighteen. Rule 9(b), however, is a special pleading rule, contrary to the general philosophy of simplified pleading of the Federal Rules of Civil Procedure. Therefore, "its scope of application should be construed narrowly and not extended to other legal theories or defenses." 5 C. Wright & A. Miller, Federal Practice and Procedure § 1297 at 405 (1969). Rule 9(b) only applies to claims based on averments of fraud or mistake. *U.S. v. Bonanno Organized Crime Family*, 683 F.Supp. 1411, 1427 (E.D.N.Y.1988) (citing *United States v. Rivieccio*, 661 F.Supp. 281, 290 (E.D.N.Y.1987)). Rule 9(b) is not applicable to breach of fiduciary duty, conversion or unjust enrichment claims; it only applies "to the claims sounding in fraud." *Rivieccio, supra,* 661 F.Supp. at 290. Furthermore, this Court has held that where counts for fraudulent concealment of a conversion scheme and conspiracy to convert are separately pleaded, Rule 9(b) does not

apply to the latter. *See Rich–Taubman Associates v. Stamford Restaurant,* 587 F.Supp. 875, 880 (S.D.N.Y.1984).

Defendants provide no support for their contention that claims thirteen through eighteen also must be plead with particularity under Rule 9(b), as they constitute public fraud. On the contrary, the following are not based in fraud: count seven alleges breach of an implied covenant of good faith and fair dealing; count thirteen is for corporate waste; the sixth and fourteenth counts are for conversion of stock; count seventeen is a statutory dissolution claim; and counts fifteen, sixteen and eighteen are shareholder derivative claims. The derivative claims, for example, are based on alleged corporate waste. Complaint ¶¶ 15, 16.

Plaintiff may replead counts one, five and eight within thirty days of this order. *See Luce, supra,* 802 F.2d at 56; *Yoder v. Orthomolecular Nutrition Institute, Inc.,* 751 F.2d 555, 562 n. 6 (2d Cir.1985) (leave to amend "almost always granted"). If plaintiff decides to replead, he should set forth each alleged misrepresentation more specifically as to its time and the content and context of the alleged misrepresentation, as well as to the speaker.

The Contract Claim (Count 2)

█ Defendants argue that Zucker's breach of contract claim, count two, should be dismissed with prejudice because (1) it fails to satisfy the statute of frauds and (2) material contract terms are missing. This Court disagrees.

The New York statute of frauds for securities contracts, N.Y.U.C.C. 8–319, provides four instances in which an oral contract for the sale of securities can be enforced.[2] This Court disagrees with defendant's argument that "Zucker has alleged no facts which would satisfy any of the [four] statutory exceptions for enforcement of such an oral contract." Memorandum in Support of Motion to Dismiss at 21. Plaintiff has attached exhibits to its moving papers that it argues satisfy each of the four exceptions. The statute of frauds may be satisfied by several incomplete writings if the agreement can be pieced together out of these separate writings—not all of which need to be signed—as long as one writing is signed by the party to be charged. *APS Food Systems Inc. v. Ward Foods, Inc.,* 70 A.D.2d 483, 421 N.Y.S.2d 223, 225–26 (1st Dept.1979). This Court has recognized that a claim cannot be dismissed under Rule 12(b)(6) unless the movant demonstrates with certainty, based on the pleadings, that plaintiff is entitled to no relief under any state of facts that could be proved in support of the claim. *See Stratton Group. Ltd. v. Sprayregen,* 458 F.Supp. 1216 (S.D.N.Y.1978). At this point, however, this Court need only consider the complaint to determine whether the plaintiff generally alleges any writings that could satisfy the exceptions. Contrary to defendants' assertion, the complaint clearly states that "Zucker's interest was recognized in informal writings and otherwise...." Complaint ¶ 28. On the basis of the complaint alone, the plaintiff generally alleges the existence of writings that may satisfy § 8–319(a) or § 8–319(c).[3]

**2.** Two of these exceptions are as follows:

(a) there is some writing signed by the party against whom enforcement is sought or by his authorized agent or broker sufficient to indicate that a contract has been made for sale of a stated quantity of described securities at a defined or stated price; or

\*   \*   \*   \*   \*   \*

(c) within a reasonable time a writing in confirmation of the sale or purchase and sufficient against the sender under paragraph (a) has been received by the party against whom enforcement is sought and he has failed to send written objection to its contents within ten days after its receipt; or

\*   \*   \*   \*   \*   \*

N.Y.U.C.C. § 8–319(a, c) (McKinney's 1989).

**3.** The Court need not reach plaintiff's part performance argument, which is refuted by defendants who argue that the plaintiff's continued employment is not "unequivocally referable." Nonetheless, this Court notes that it would be improper to dismiss on the basis of the statute of frauds as long as there are material issues of fact as to the referability of Zucker's continued employment to the alleged oral contract. *See generally Gross v. Vogel,* 81 A.D.2d 576, 437 N.Y.S.2d 431, 437 (2d Dept.1981); *Newman v. Crazy Eddie, Inc.,* 119 A.D.2d 738, 501 N.Y.S.2d 398, 399, *appeal dismissed,* 68 N.Y.2d 998, 510 N.Y.S.2d 1029, 503 N.E.2d 126 (2d Dept.1986).

■ Defendants also argue that plaintiff does not state a claim for breach of contract because the alleged contract is too indefinite in its subject matter to be enforced by a court. Defendants allege many ambiguities, including which shareholder rights and limitations would govern the stock, the time for performance, which Archer Companies were intended and alleged ambiguities concerning the length of employment required as consideration.

This Circuit has enforced a contract for the sale of an unspecified liquor distributorship within a reasonable time. *Lee v. Joseph E. Seagram & Sons, Inc.,* 552 F.2d 447 (2d Cir.1977). The plaintiffs in *Lee* had agreed to the sale of the "Capitol City" distillery, in which they owned one-half of the stock, in exchange for a liquor distributorship in a location acceptable to plaintiffs, and that the price of this new distributorship would by comparable to the plaintiffs' previous investment in Capitol City. The plaintiff had performed and the issue raised was the enforceability of the oral promise of Seagram, which included some arguably indefinite terms. Even though the specific distillery was not specified and the time for performance was merely a reasonable time, the Court stated that "it should be slow to deny enforcement 'if it is convinced that the parties themselves meant to make a contract and to bind themselves to render a future performance. Many a gap in terms can be filled, and should be, with a result that is consistent with what the parties said ...' " *Lee, supra,* 552 F.2d at 453 (quoting Corbin on Contracts, § 97, at 425–26).

The defendants rely on a recent New York Court of Appeals case involving the enforceability of an alleged lease in which the rent and term of the lease were not specified. *Joseph Martin Jr. Delicatessen, Inc. v. Schumacher,* 52 N.Y.2d 105, 436 N.Y.S.2d 247, 417 N.E.2d 541 (1981) (after opportunity to consider evidence of the intent of the parties, the court held on summary judgment that the alleged lease lacked specific terms relating to subject matter); *see also Rhee v. Dahan,* 116 Misc. 2d 548, 457 N.Y.S.2d 684 (1st Dept.1982) (upheld summary proceeding, as parties merely agreed to agree to lease term and rent). Defendants also cite a Second Circuit case in which the refusal to enforce the contract was substantially based on a finding that the parties did not intend to be bound by their oral understanding or any written draft agreements, but instead intended to be bound only upon execution of a formal written agreement. *Reprosystem, B.V. v. SCM Corporation,* 727 F.2d 257 (2d Cir.), *cert. denied,* 469 U.S. 828, 105 S.Ct. 110, 83 L.Ed.2d 54 (1984).

The defendants have not argued that an oral agreement existed that was not intended to be effective until it was reduced to writing. In the present action, plaintiff has plead essential terms such as the amount of stock to be transferred and the time for performance. It may be inferred that the consideration required under the alleged 1979 agreement was one year of service for each percentage of stock paid each year over the ten-year period. Plaintiff alleges that this contract was modified in 1981, in exchange for approximately two years of services for which no stock was received, to require payment of the entire ten percent. Additionally, ambiguities as to which shareholder rights the parties intended is not a basis for finding the contract unenforceable at this time on a motion to dismiss before any significant discovery has been completed and presented to the Court.

In the present action, the complaint generally identifies essential material terms such as the subject matter, the time for performance and also the consideration provided. Whether these terms are too indefinite to be enforced is an issue better left for summary judgment or trial, at which time the Court can better consider whether "the parties themselves meant to make a contract and to bind themselves." *Lee, supra,* 552 F.2d at 453 (court upheld enforcement of contract based on evidence of parties produced in jury trial). Defendants' motion to dismiss the contract claim for failure to state a claim is denied.

Promissory Estoppel (Count 3)

■ The elements of plaintiff's claim for promissory estoppel include: (1) a clear and

unambiguous promise; (2) a reasonable and foreseeable reliance by the party to whom the promise is made; and (3) an injury sustained by the party asserting the estoppel by reason of his reliance. *See Ripple's of Clearview, Inc. v. Le Havre Associates,* 88 A.D.2d 120, 452 N.Y.S.2d 447, 449 (2d Dept.1982). As this Court refused to dismiss the contract claim for lack of sufficiently definite terms, this Court similarly finds that the complaint at least pleads a promise that may be enforceable following more discovery of the parties' intent. Furthermore, plaintiff pleaded both a series of misrepresentations and that he and Katz were long-time friends and business associates. Upon these pleaded facts, the second element of "reasonable and foreseeable" reliance is sufficiently pleaded. This Court disagrees with defendants' contention that as a matter of law this claim should be dismissed because "at some point—and surely before eight years—Zucker's reliance became inherently unreasonable...." Memorandum in Support at 25 n. 11.

Defendants further argue that the nature of plaintiff's alleged injury cannot be categorized as the type of "unconscionable injury" that New York courts require to uphold promissory estoppel claims. The New York courts have expressly stated that "[e]ven if New York law fully embraced the doctrine of promissory estoppel, that doctrine would only be applied to the limited class of cases where the promisee, in reliance upon a promise, has suffered unconscionable injury." *D & B Boening, Inc. v. Kirsch Beverages, Inc.,* 99 A.D.2d 522, 471 N.Y.S.2d 299, 302 (2d Dept.), *aff'd,* 63 N.Y.2d 449, 483 N.Y.S.2d 164, 472 N.E. 2d 992 (1984); *see also Tutak v. Tutak,* 123 A.D.2d 758, 507 N.Y.S.2d 232, 233 (2d Dept. 1986) (promissory estoppel would not support promise allegedly made to woman by future father-in-law for support, as reliance upon it and the subsequent marriage, birth of child and abandonment by husband did not constitute unconscionable injury).

In *D & B Boening,* the court concluded that an oral agreement to act as a soft drink sub-distributor on Long Island, which had existed since 1955, was not enforceable

as it was barred by the statute of frauds. 471 N.Y.S.2d at 302. Even though plaintiff had acted as the sub-distributor since 1955, and had apparently relied on a 1965 promise that the distributorship would continue as long as plaintiff performed satisfactorily, the court refused to apply promissory estoppel. *Id.* The *D & B Boening* court held that "under the circumstances presented in the case at bar, the application of the Statute of Frauds would not lead to an unconscionable result." *Id.*

The plaintiff here asserts that the alleged promise should be enforced, regardless of whether the statute of frauds bars the contract claim. New York law clearly requires unconscionable injury for a court to enforce a promise under the doctrine of promissory estoppel that would otherwise be barred by the statute of frauds. *Swerdloff v. Mobil Oil Corp.,* 74 A.D.2d 258, 427 N.Y.S.2d 266, 269 (2d Dept.), *app. denied,* 50 N.Y.2d 913, 431 N.Y.S.2d 523, 409 N.E. 2d 995 (1980). In *Swerdloff,* the plaintiff asserted that after threatening to leave his position as manager of a gas station, the defendants promised that if he continued as a manager he would obtain the dealership when the station was converted to a dealership. *Id.,* 427 N.Y.S.2d at 268. Furthermore, plaintiff asserted that he had forgone other business opportunities, such as purchasing a one-half interest in an insurance agency, in reliance upon defendant's promises. *Id.* Plaintiff also alleged that he worked endless hours to build goodwill, not for a subsequent dealer, but for himself, in reliance on the promised dealership. *Id.*

The plaintiff in the present case allegedly suffered injuries—like the loss of business opportunities and the loss of an allegedly promised ownership interest in his employer—that are similar in kind to those suffered by the *Swerdloff* plaintiff. As the *Swerdloff* court found that those injuries were not unconscionable, this Court similarly finds a lack of unconscionable injury in the present action. Count three is dismissed with prejudice as it fails to plead facts upon which unconscionable injury could be found.

Claims based on Securities Ownership

Defendants move for the dismissal of counts ten and eleven, and thirteen through eighteen, primarily because these claims depend on plaintiff's status as a stockholder. Since this Court has declined to dismiss the contract claim, it would be inconsistent at this time to dismiss these claims on the basis that no enforceable contract has been plead.[4] Defendants argue alternatively that, even if the contract for shares is enforceable, many of the claims based on stock ownership fail to state a claim. Memorandum in Support at 34. The Court considers these alternative arguments below.

### 1. Breach of Fiduciary Duty Claims (Counts 10, 13 and 14)

Count ten alleges that Katz breached his fiduciary duty, but it does not specify the allegedly violative conduct.[5] As the defendants object, "Zucker's complaint provides no details as to the nature of the duty breached or how he was 'severely damaged'." Memorandum in Support at 35. Although count ten incorporates prior counts, it fails to identify the conduct on which the claim is based. Moreover, count ten is duplicative of counts thirteen and fourteen, which respectively allege corporate waste and breach of fiduciary duty by virtue of such waste. Count ten should be dismissed with prejudice, as it does not specify an alleged breach of duty and fails to adequately state a claim.

In contrast, the complaint at least identifies the offending conduct in counts thirteen and fourteen. Although based on different theories, the conduct complained of in both counts is an alleged corporate conversion by Katz amounting to $200,000 a year over a ten year period. Furthermore, the Court is not persuaded by defendants' argument that these claims constitute

"public fraud" to which Rule 9(b) applies, as this Court finds they are not based in fraud. Consequently, defendants' motion to dismiss counts thirteen and fourteen is denied.

### 2. The Derivative Claims (Counts 15 and 16)

Defendants move to dismiss the shareholder derivative claims for failure to verify the complaint pursuant to Federal Rule of Civil Procedure 23.1. The defendants rely on a relatively old decision of this Court that briefly considered the verification issue after already finding other fatal flaws in the complaint. *See Marcus v. Textile Banking Co.*, 38 F.R.D. 185, 186 (S.D.N.Y.1965) (after dismissing the complaint on other grounds, this Court characterized the failure to verify as "another fatal flaw" citing no case law in support of this conclusion). However, several more recent decisions of this Court have declined to dismiss an unverified complaint and granted leave to submit an affidavit verifying the complaint. *See Markowitz v. Brody*, 90 F.R.D. 542, 549–50 n. 2 (S.D.N.Y. 1981); *Kirshner v. Goldberg*, 506 F.Supp. 454, 460 (S.D.N.Y.1981), *aff'd mem.* 742 F.2d 1430 (2d Cir.1983); *Weisfeld v. Spartans Industries, Inc.*, 58 F.R.D. 570 (S.D. N.Y.1972).

This Court has stated that "[t]he verification requirement of Rule 23.1 is intended only to clear the courts of strike suits and not to be a general impediment to shareholder derivative actions." *Markowitz, supra*, 90 F.R.D. at 549–50 n. 2 (citing *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 371, 86 S.Ct. 845, 850, 15 L.Ed.2d 807 (1966)). In an action such as this that does not on its face appear to be a strike suit, and where the failure to verify the complaint was merely an oversight, a court may decline to dismiss the complaint and

---

**4.** As an example, count eleven, which alleges that defendants were at least negligent in failing to record plaintiff's name in the company's books as a shareholder, is attacked by defendants who argue that it would have been negligent to do otherwise because plaintiff is not a shareholder. Defendants' argument fails, as this Court did not dismiss the contract claim.

**5.** In relevant part, count ten states that "Katz's breach of fiduciary duties owed to Zucker severely damaged Zucker" without in any way specifying the offending conduct. Complaint ¶ 75.

instead require the plaintiff simply to submit a verifying affidavit. *See, e.g., id.;* *Weisfeld v. Spartans Industries, Inc.,* 58 F.R.D. 570, 577–78 (S.D.N.Y.1972). If the plaintiff in this action files another complaint to cure the counts dismissed without prejudice, then that complaint should comply with Federal Rule of Civil Procedure 23.1. Alternatively, plaintiff may simply file and serve an affidavit within thirty days of this opinion to comply with the requirements of Rule 23.1.

### 3. Statutory Dissolution (Count 17)

■ Count seventeen requests in relevant part that this Court "direct the dissolution of the Archer Companies, in the manner most consistent with the procedures set forth in N.Y. Business Corporation Law, § 1011 *et seq."* Complaint ¶ 120(a). The complaint unequivocally pleads statutory dissolution, and not "judicial dissolution" as suggested by plaintiff. *See* Memorandum in Opposition at 34. Under New York law, statutory dissolution may be brought only by "[t]he holders of twenty percent or more of the outstanding shares of a corporation." N.Y.Bus. Corp.Law § 1104–a(a). Even though the plaintiff's status as a shareholder remains in dispute, he claims only a ten percent interest in the Archer Companies. Even assuming plaintiff is a ten percent shareholder, the statutory dissolution claim fails on its face. Count seventeen is thus dismissed with prejudice.

### 4. Equitable Accounting of Can Carriers, Inc. (Count 18)

■ Defendants move to dismiss count eighteen on the grounds that it fails to state the elements of a claim for an equitable accounting. In order to state such a claim, "plaintiff must prove a confidential relationship which induced him to entrust [the defendants] with money or property and that no adequate legal remedy exists." *Kastle v. Steibel,* 120 A.D.2d 868, 502 N.Y. S.2d 538, 539 (3d Dept.1986). This Court finds that plaintiff has alleged the presence of a fiduciary relationship by virtue of his alleged fifty percent ownership interest in Can Carriers. *Cf. Grossman v. Laurence*

*Handprints–N.J., Inc,* 90 A.D.2d 95, 455 N.Y.S.2d 852, 858 (2d Dept.1982) (plaintiff seller of securities did not have sufficient fiduciary relationship with defendant purchasers who defaulted on promissory note). Furthermore, the plaintiff has incorporated allegations of corporate waste by Katz involving all defendant companies, including Can Carriers. These allegations, incorporated from counts thirteen and fourteen, sufficiently plead a breach of a fiduciary relationship. Nevertheless, as an equitable claim, count eighteen is only valid if there is no adequate legal remedy. *See Kastle, supra,* 502 N.Y.S.2d at 539 (3d Dept.1986) (citing *Grossman, supra,* 455 N.Y.S.2d 852 (2d Dept.1982)). Defendant argues that as a minority shareholder the legal remedy of examining the corporate books is unavailable. Memorandum in Opposition at 38. This Court disagrees.

Count eighteen states that "Zucker is the legal or equitable holder of fifty percent of the shares of Can [Carriers]" and that "although a 50 percent holder of Can [Carrier]'s stock, Zucker has not been afforded the opportunity to examine its books." Complaint ¶¶ 123, 124. Zucker's claim to fifty percent ownership of Can Carriers is factually inconsistent with his contention that, as a minority shareholder, he has no legal right to inspect the books of Can Carriers corporation. Assuming that plaintiff is a fifty percent owner of Can Carriers, he cannot be considered a minority shareholder. Moreover, he has a legal remedy under New York law to seek inspection of corporate records. *See* N.Y. Bus.Corp.Law § 624(d) (McKinney's 1986) (upon denial of request to inspect such records, a five percentage or six-month stockholder may bring a judicial proceeding). Section 624(b) of the Business Corporation Law provides that a five percent shareholder has the right to examine in person or by agent or attorney, during usual business hours, the corporation's minutes of the proceedings of its shareholders and the record of shareholders. *See* N.Y.Bus.Corp.Law § 624(b) (McKinney's 1986). Furthermore, section 624(e) provides a five percent shareholder the

right to the previous year's profit-and-loss statement and balance sheet regardless of whether they have been distributed to shareholders or made public, and any subsequent interim balance sheets and profit-and-loss statements that have been made available to either the shareholders or the public.[6] In opposition to this motion, plaintiffs have incorrectly stated that this legal remedy is unavailable, not that its scope is inadequate. Count eighteen is accordingly dismissed without prejudice, with leave to replead within thirty days of this opinion. If plaintiff repleads, plaintiff must adequately allege that the legal remedies are inadequate.

Civil Conspiracy (¶¶ 83–85)

■ Count eleven includes two seemingly unrelated counts, one for negligent bookkeeping and one alleging a conspiracy between the defendants to deprive plaintiff of the ten percent interest in the Archer Companies. The claim for civil conspiracy, as set forth in the complaint, states that "defendants between and among themselves have conspired to deprive Zucker of his bargained-for compensation, violating the duties described in this Complaint and severely harming Zucker." Complaint ¶ 85. Contrary to plaintiff's assertions, "there is no substantive tort of civil conspiracy" in New York. *Noble v. Creative Technical Services, Inc.*, 126 A.D.2d 611, 511 N.Y.S. 2d 51, 53 (2d Dept.1987) (citing *Burns Jackson Miller Summit & Spitzer v. Lindner*, 88 A.D.2d 50, 452 N.Y.S.2d 80 (2d Dept.1982), *aff'd*, 59 N.Y.2d 314, 464 N.Y.S. 2d 712, 451 N.E.2d 459 (1983)). Although not itself a substantive tort, conspiracy may be alleged to tie a defendant to an actionable tort. *Noble, supra*, 126 A.D.2d 611, 511 N.Y.S.2d at 53. Plaintiff has failed to use the alleged conspiracy count in this fashion, but instead sets it off as if it were a separate claim. The civil conspiracy claim in paragraphs eighty-three to

eighty-five is dismissed with prejudice, as it does not state a claim. *See Ahmed v. Nat. Bank of Pakistan*, 572 F.Supp. 550, 554–55 (S.D.N.Y.1983) (conspiracy claim dismissed because no such substantive claim exists under New York law and it was merely duplicative of other claims).

Prima Facie Tort and Intentional Infliction of Emotional Distress (Counts 12 and 9)

■ Count twelve alleges prima facie tort. The elements of prima facie tort under New York law are: (1) the intentional infliction of harm; (2) causing special damages; (3) without excuse or justification; (4) by an act or series of acts that would otherwise be lawful. *Chen v. U.S.*, 854 F.2d 622, 627 (2d Cir.1988) (citing *Curiano v. Suozzi*, 63 N.Y.2d 113, 480 N.Y.S.2d 466, 469, 469 N.E.2d 1324, 1327 (1984)). A claim for prima facie tort must allege that the plaintiff suffered a "specific and measurable loss, which requires an allegation of special damages." *Dalton v. Union Bank of Switzerland*, 134 A.D.2d 174, 520 N.Y.S.2d 764, 767 (1st Dept.1987). Plaintiff has alleged specific losses by incorporation of paragraphs twenty-three and twenty-four, which discuss his reliance on the expectation of owning ten percent of the Archer Companies and the opportunity cost of forgoing other employment and business prospects.

Count twelve should be dismissed if the complaint alleges that the defendants acted in part for their own pecuniary benefit, and not solely with intent to harm the plaintiff. *Fox v. Boucher*, 794 F.2d 34, 37 (2d Cir. 1986) (citing *Board of Education v. Farmingdale*, 38 N.Y.2d 397, 380 N.Y.S.2d 635, 343 N.E.2d 278 (1975). According to this Court, a "defendant's sole motivation must be to cause injury to the plaintiff. If the defendant acts from mixed motives, a claim

---

6. New York Business Corporation Law § 624(e) provides in relevant part:

Upon the written request of any person who shall have been a shareholder of record for at least six months immediately preceding this request, or of any person holding ... at least five percent of any class of the outstanding shares, the corporation shall give or mail to

such shareholder an annual balance sheet and profit and loss statement for the preceding fiscal year, and if any interim balance sheet or profit and loss statement has been distributed to its shareholders or otherwise made available to the public, the most recent such interim balance sheet or profit and loss statement.

for *prima facie* tort is not made out." *Sadowy v. Sony Corp. of America*, 496 F.Supp. 1071, 1077 (S.D.N.Y.1980); *see also Murphy v. American Home Products Corp.*, 58 N.Y.2d 293, 461 N.Y.S.2d 232, 236–37, 448 N.E.2d 86, 90–91 (1983) (action by discharged employee for prima facie tort dismissed, as plaintiff did not allege that his discharge was without economic or social justification).

Plaintiff unambiguously pleaded, in attributing the motivations for Katz's alleged fraudulent misrepresentation, that "[t]his offer was motivated, in whole or in part, by Katz' accurate perception that Zucker's continuation of employment was extremely valuable to the Archer Companies." Complaint ¶ 21. The plaintiff now argues that even if the complaint undermines the claim for prima facie tort against Mr. Katz and defendant companies, that it does not attribute any economic motivation to Judith Katz. Consequently, the plaintiff apparently contends that the count should stand against her. This Court disagrees. As alleged by the complaint, Ms. Katz received $25,000 annually for a "no-show" job, *see* Complaint ¶ 115, and she negligently failed to record plaintiff in the company books as a shareholder. Complaint ¶¶ 81, 82. Count twelve is dismissed with prejudice against all defendants, including Judith Katz, as Ms. Katz would have benefitted directly from any benefit attributed to Mr. Katz and the defendant companies.

■ New York follows the Restatement (2d) of Torts definition of intentional infliction of emotional distress. *Martin v. Citibank, N.A.*, 762 F.2d 212, 220 (2d Cir.1985). New York courts have strictly required that claims for this tort exhibit conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Id.* (quoting *Fischer v. Maloney*, 43 N.Y.2d 553, 402 N.Y.S.2d 991, 992–93, 373 N.E.2d 1215, 1217 (N.Y.Ct.App. 1978)); *see also Hughes v. Patrolmen's Benev. Ass'n of City of N.Y.*, 850 F.2d 876, 882 (2d Cir.1988).

The plaintiff here has not plead conduct that would satisfy the strict requirement under state law that the defendants' actions be so outrageous as to be regarded as atrocious and utterly intolerable in a civilized society. *See, e.g., Murphy v. American Home Products Corp.*, 112 Misc.2d 507, 447 N.Y.S.2d 218, 219–20 (N.Y.Cty. Sup.Ct.) (conduct not outrageous even though plaintiff alleged that he was transferred and demoted for reporting fraud, told that he could not advance because of his age, discharged and ordered to immediately leave, and ordered to leave building when he returned to pick up belongings, which were then dumped in the street), *modified on other grounds*, 88 A.D.2d 870, 451 N.Y.S.2d 770 (1st Dept.1982), *aff'd*, 58 N.Y.2d 293, 461 N.Y.S.2d 232, 236, 448 N.E.2d 86, 89–90 (1983). Although the defendants' conduct here may constitute breach of contract and fraud, plaintiff's complaint fails to describe sufficiently outrageous behavior to support the intentional infliction of emotional distress claim. *Compare Economu v. Borg–Warner Corp.*, 829 F.2d 311, 317 (2d Cir.1987) (allegations of a conspiracy to terminate plaintiff as a senior manager after corporate takeover and several alleged misrepresentations did not constitute "atrocious or utterly intolerable" conduct) *with Galella v. Onassis*, 487 F.2d 986, 989, 994 (2d Cir. 1973) (photographer who continually followed and harassed defendant and her children, endangering the safety of the children while swimming, water skiing and horseback riding was liable for intentional infliction of emotional distress). Count nine is therefore dismissed with prejudice.

Constuctive Termination (Count 4)

■ The New York courts have recognized constructive termination as the basis for an action against an employer for wrongful discharge following the plaintiff's admitted resignation. *See Imperial Diner, Inc. v. State Human Rights Appeal Board*, 52 N.Y.2d 72, 436 N.Y.S.2d 231, 234–35, 417 N.E.2d 525, 528–29 (1980) (constructive discharge where employer verbally attacked employee with anti-Semitic obscenities in the presence of co-workers and refused to later apologize); *Brown v.*

*State,* 125 A.D.2d 750, 509 N.Y.S.2d 169 (3d Dept.1986) (constructive discharge where supervisor cleaned out employee's desk, changed office locks and refused to let her return to work, even though she remained on the payroll); *Beal v. McCall,* 107 A.D.2d 648, 485 N.Y.S.2d 528 (1st Dept.1985) (no constructive discharge where pregnant employee was told that she would not have been hired, had employer known of pregnancy, but was otherwise treated courteously, not asked to leave, and court did not fully believe her asserted reasons for quitting). The *Imperial Diner* court stated that it would be unrealistic to limit action for discriminatory discharge to cases in which the plaintiff was actually fired because:

> It is also possible, and perhaps more likely, that an employer who believes certain individuals are undesirable employees because of some discriminatory factor, will engage in conduct which encourages the employee to quit, in which case it may be said that there has been a constructive discriminatory discharge.

436 N.Y.S.2d at 234, 417 N.E.2d at 529. Even though the *Imperial Diner* court found constructive termination in the context of discriminatory discharge, this Court finds that the same rationales justify recognition of constructive termination in the context of wrongful discharge in an alleged violation of a for-cause employment contract.

New York law further requires that an action for wrongful discharge be based on an express agreement establishing a fixed employment duration, and under which the employee can be terminated only for cause. *See Sabetay v. Sterling Drug, Inc.,* 69 N.Y.2d 329, 514 N.Y.S.2d 209, 211–12, 506 N.E.2d 919, 921–22 (1987) (upheld claim dismissal, as no express agreement for specific term existed). *But see Weiner v. McGraw–Hill, Inc.,* 57 N.Y.2d 458, 457 N.Y.S.2d 193, 443 N.E.2d 441 (1982) (express agreement, although not for fixed employment term, found where application signed by plaintiff was expressly governed by employee handbook, which stated that employees are only dismissed for cause). The *Sabetay* court further rejected the

plaintiff's argument that New York law provides for implication of a covenant of good faith and fair dealing in employment contracts because the reason for implying such an obligation would be to further the other terms of the parties agreement. *Sabetay, supra,* 514 N.Y.S.2d at 211–12, 506 N.E.2d at 921–22. The court held that such an implication would directly contradict the other terms of an employment-at-will contract, and thus, no covenant of good faith and fair dealing should be implied. *Id.* at 212–13, 506 N.E.2d at 922. Consequently, employment contracts are at-will under New York law unless expressly agreed otherwise.

In the present action, plaintiff alternatively alleges that either by implication or express agreement he could only be terminated for cause. Nevertheless, such an agreement, if in existence, must be express, as the Court cannot imply a for-cause term into the employment agreement. While plaintiff alternatively alleged an express agreement, he has not plead any basis for the existence of an express agreement. Count four is therefore dismissed without prejudice. Plaintiff may replead a constructive termination count, asserting some factual basis for finding an express agreement, within thirty days of this opinion.

Enforcement of Compromise and Settlement (Counts 19 and 20)

Plaintiff alleges that the parties had agreed to a settlement of the action on October 2, 1987, under which plaintiff would receive over $500,000 and two defendant companies. Complaint ¶¶ 127–31. Under New York law, however, this alleged agreement is within the statute of frauds. *See* N.Y.Gen.Oblig.L. § 15–501. This section unequivocally provides that such an agreement:

> ... shall not be denied effect as a defense or as the basis of an action or counterclaim ... provided the promise of the party against whom it is sought to enforce the accord is in writing and signed by such party or by his agent.

*Id.* § 15–501(2) (McKinney's 1978). The plaintiff makes two arguments to support enforcement of the alleged agreement de-

spite the absence of a signed, written agreement. First, the plaintiff argues that defendants should be estopped because of their fraudulent acts.[7] Second, the plaintiff appears to argue that, even though no single written and signed agreement exists, several writings do exist, some of which may be signed by the defendants, and that taken together they satisfy the statute of frauds.[8]

The complaint, however, does not specify fraud surrounding the settlement agreement itself that would support the estoppel argument. There also is no mention in the complaint of the signed writings that may be considered as satisfaction of the statute of frauds, although the existence of such writings is argued in the plaintiff's opposition to this motion. Consequently, claims 19 and 20 are dismissed without prejudice with leave to replead in thirty days of this opinion. If plaintiff does replead these claims, he should specifically set forth the alleged fraudulent conduct and/or satisfactory writings.

### Defendants' Motion for Rule 41(d) Costs

██ Defendants move under Rule 41(d) for the costs of a previous action. On January 26, 1988, the plaintiff filed a voluntarily dismissal without prejudice of a similar prior action pursuant to Federal Rule of Civil Procedure 41(a)(1), which this Court then so ordered. In a March 18, 1988 conference, the parties stipulated that the plaintiff would serve the present complaint and the defendants reserved their rights under Rule 41. The present complaint, which was then filed on March 23, 1988, was nearly identical to the former with the notable exception of absent non-diverse parties. Rule 41(d) provides that:

> If a plaintiff who has once dismissed an action in any court commences an action based upon or including the same claim against the same defendant, the court may make such order for the payment of costs of the action previously dismissed as it may deem proper and may stay the proceedings in the action until the plaintiff has complied with the order.

*Id.* As clearly evident from the language of this Rule, "the matter is discretionary with the court." 9 C. Wright & A. Miller, Federal Practice and Procedure § 2375 at 244 (1971). As a general rule, courts "may refuse to make this requirement if it appears that there was a good reason for the dismissal of the prior action or that the plaintiff is financially unable to pay the costs." *Id.* at 244. Plaintiff does not argue that it had any persuasive justification or good reason for voluntarily dismissing the first action, then filing a nearly identical second action. Plaintiff also does not raise the issue of hardship or inability to pay.[9]

This action falls within the scope of Rule 41(d) and the Court finds that no adequate justification for the dismissal that would support denial of this motion. Plaintiff must pay defendant the reasonable, not necessarily actual, costs incurred by defendant in defense of the first action. *See Activox, Inc. v. Envirotech Corp.*, 532 F.Supp. 248, 251 (S.D.N.Y.1981). All proceedings in this action will be stayed pending payment of such costs, except that plaintiff has leave to replead certain counts, as provided in this opinion. *See id.*

---

**7.** Plaintiff suggests that this action is analogous to that in *Hansen v. Prudential Lines, Inc.*, 118 Misc.2d 568, 461 N.Y.S.2d 670 (Sup.Ct.Kings Cty.1983) (court recognizes the bar of the statute of frauds and of a state procedural rule and cites authority supporting estoppel regarding the procedural rule). This Court does not find the *Hansen* case particularly persuasive.

**8.** Plaintiff proffers *Bruce Realty Co. v. Berger*, 327 F.Supp. 507, 511 (S.D.N.Y.1971) as supportive of its argument that the statute of frauds is satisfied. This case involved a settlement documented by several signed letters written by plaintiff and defendant which, taken as an integrated whole, constituted a writing sufficient to take the settlement out of the statute of frauds.

On the other hand, the alleged draft settlement agreement was marked "Draft", which would appear to indicate that the parties did not intend to be bound until a more formal signed agreement was reached. *See Reprosystems, supra*, 727 F.2d at 257. Nevertheless, this raises the question of the intent, which can be better resolved on either summary judgment or at trial.

**9.** Plaintiff cites a single case in opposition to defendants' motion, but that case did not even involve an interpretation of Rule 41(d). *See Stern v. Leucadia National Corp.*, 844 F.2d 997 (2d Cir.), *cert. denied*, ⸺ U.S. ⸺, 109 S.Ct. 137, 102 L.Ed.2d 109 (1988). *Stern* involved the issue of Rule 11 sanctions, not costs under Rule 41(d).

(ordered costs for first patent action and stayed second action until costs of first were paid). The parties should endeavor to agree on reasonable costs, but if such agreement is not reached, defendants should file and serve an affidavit within thirty days of this opinion for reasonable costs, and plaintiff may respond, if at all, ten days after service of defendants' affidavit.

### Conclusion

For the reasons articulated above, the following counts are dismissed with prejudice: three, nine, ten, twelve, seventeen, and the civil conspiracy claim of count eleven. The following are dismissed without prejudice, with leave to replead within thirty days: one, four, five, eight, eighteen, nineteen and twenty. Plaintiff is further ordered to pay defendants' reasonable costs under Rule 41(d) in defending the prior action, and the present action is stayed until such payment is made.

SO ORDERED.