S. Craig LEMMON, Appellant,

v.

UNITED WASTE SYSTEMS, INC., Appellee.

No. 2–96–290–CV.

Court of Appeals of Texas, Fort Worth.

Dec. 18, 1997.

J. Daniel McElroy, Dallas, for Appellant.

Matthew D. Goetz, Fort Worth, for Appellee.

Before LIVINGSTON, RICHARDS and HOLMAN, JJ.

## OPINION

LIVINGSTON, Justice.

### I. INTRODUCTION

Appellant S. Craig Lemmon (Lemmon) appeals from the trial court's decision to grant Appellee United Waste Systems, Inc.'s (United Waste) two separate summary judgment motions in Lemmon's underlying wrongful termination and breach of employment agreement suit. In nine points, Lemmon argues the trial court erred in granting summary judgment because: (1) New York law controls and New York law does not allow an employer to terminate an employee who has signed an employment contract for a definite term absent a showing of good cause, even when the contract by its terms purports to reserve to the employer the right to terminate the employee without cause; and (2) fact issues exist as to the intent of the parties concerning the term of and rights under the employment contract and the propriety of

Lemmon's claims for promissory estoppel and breach of an oral contract to extend the period Lemmon had to exercise his stock options.

## II. FACTUAL BACKGROUND

### A. The Employment Agreement

United Waste and Lemmon entered into a written employment agreement (the agreement) on February 27, 1992. Lemmon was hired as a Business Development Manager to find acquisition candidates for the expansion of United Waste's solid waste disposal business. Section 6 of the agreement covered the term of employment and the termination rights of the parties, providing, in part:

Term; Termination; Rights of Termination. **The term of this Agreement shall begin March 2, 1992 and continue for a term of three (3) years**, and, if mutually agreed in writing prior to the expiration of the term, shall continue thereafter on the same terms and conditions herein. **This Agreement and Employee's employment may be terminated in any one of the following ways:**

. . . .

(b) **The company may terminate the Agreement after ten (10) days written notice to Employee for good cause,** including, but without limitation: (1) Employee's material breach of this Agreement, including, without limitation, failure to perform his obligations hereunder in a manner reasonably satisfactory to the Board of Directors of the Company; . . . .
(c) **The Company may terminate this Agreement without cause at any time,** provided that in the event of a termination of this Agreement without cause, Employee shall be entitled to a severance payment equal to three (3) months at his then current base salary, . . . . In the event that Employee obtains other employment during the three-month severance period, the Company's severance obligation shall be reduced by the amount of Employee's new compensation with his new employer. Employee agrees to use his good faith best efforts to obtain new employment during such severance period in order to mitigate

the Company's severance obligation hereunder. [Emphasis added.]

Section 2 of the agreement covered Lemmon's compensation and provided him with potentially valuable stock options. The pertinent portion of the compensation section provided, in part:

(ii) The Company agrees that, on or prior to the date of the initial public offering, if there is an initial public offering of the Company's common stock (the "IPO"), the Company will grant to Employee, provided Employee is employed by the Company pursuant to this Agreement on such date, a non-qualified stock option (the "Option") to purchase shares of the Company's publicly traded common stock, subject to the following provisions:

. . . .

c) *Vesting and Exercise Periods*—The Option can be exercised at the rate of 33–1/3% on the later of the first anniversary of the date of this Employment Agreement or 90 days after the date of the IPO, and 33–1/3% on each succeeding anniversary date of the initial option date. **The Option cannot be exercised after termination of employment, provided, however, that upon termination of employment other than for death or for cause, the portion of the Option vested on the termination date may be exercised for 30 days after termination** . . . .

. . . .

Notwithstanding the foregoing, the Option must be exercised in all events no later than the 10 th anniversary date of this Agreement. [Emphasis added.]

The agreement also contained a provision stating that, "[t]his Agreement shall in all respects be construed according to the laws of the State of New York."

### B. Lemmon's Employment at United Waste

Lemmon signed the agreement in Tarrant County, Texas and performed all aspects of the agreement from his offices in Tarrant County. Soon after he began, he was promoted to President of Acquisitions and then

later to Vice President of the Southern Region. However, United Waste repeatedly rejected Lemmon's acquisition prospects and later sought to restructure part of the agreement in early 1993. Lemmon acquiesced and a probationary agreement was created whereby Lemmon would take a reduced salary for a sixty-day period. This probationary period ended, and the agreement was reinstated.

On July 9, 1992, United Waste granted Lemmon another stock option as part of its newly-created, company-stock-option plan. On December 10, 1992, United Waste sold 3,000,000 shares of its common stock on the NASDAQ National Market System. Lemmon's right to exercise his stock options vested, under the agreement, on March 10, 1993.

### C. Lemmon's Termination and the Present Suit

United Waste fired Lemmon on April 29, 1993. The termination letter did not specify whether the termination was for cause but it did state that United Waste would honor its severance package.[1] United Waste claims the termination was for good cause, namely unsatisfactory performance of his job obligations.

Lemmon and United Waste entered into post-termination settlement negotiations after disagreements arose concerning disposition of several provisions of the agreement. Lemmon asserted a right to severance pay and accrued vacation pay while both sides argued over the application of the agreement's covenant not to compete and the status of the stock options. Lemmon claims that, during the negotiations, John Milne and Bradley Jacobs, two officers of United Waste, promised to extend the stock option exercise period of his agreement for one year in consideration for not filing suit. As evidence of this oral agreement, Lemmon presented a draft severance agreement sent by Milne on May 23, 1993, in which United Waste proposed canceling the original agreement and creating new duties and obligations on its behalf including a one-year extension

of the time period Lemmon had to exercise his vested stock options. United Waste denies the existence of any formal agreement to extend the option period.

The existence of an agreement to extend the option period is crucial to Lemmon because the stock options were worthless at the time he was fired and for the thirty day period afterwards. However, if, as Lemmon claims, the parties agreed to extend the option period for one year or more, then the options could be worth millions of dollars.[2]

While negotiating, Lemmon sent United Waste three demand letters that included threats of legal action and two proposed settlement agreements. Lemmon also filed a claim with the Texas Employment Commission in June 1993. The claim was denied. Once it became clear negotiations had failed, United Waste filed suit against Lemmon in New York on December 22, 1993. The suit sought to enforce the covenant not to compete. Lemmon contested personal jurisdiction and the suit was dismissed on June 20, 1994.

Lemmon filed suit in Texas on January 18, 1994 seeking, among other things, a declaratory judgment that: (1) Texas law should be applied to the action; (2) the covenant not to compete is unenforceable; (3) United Waste breached the agreement; (4) he is entitled to monetary damages for wrongful termination; and (5) his options have not expired. Lemmon also sought: (1) all unpaid compensation due him under the agreement; and (2) specific performance of the stock options.

United Waste filed its first motion for summary judgment on April 3, 1995 contending, among other things: (1) New York law applies but that it is entitled to summary judgment under both New York and Texas law; (2) Lemmon was terminated for cause but even if Lemmon was terminated without cause, United Waste did not breach the agreement; (3) United Waste's obligations under the agreement were limited to severance payments minus mitigation savings;

---

1. Lemmon claims United Waste decided to withdraw from the Southwest region and fired many of its Texas-based employees.

2. In his brief, Lemmon claims the options were worth $2,390,000 as of December 27, 1996.

and (4) Lemmon has no claim for specific performance of the stock options because the option period expired and the options were worthless during the option period anyway.

A week before arguments were scheduled on United Waste's summary judgment motion, Lemmon amended his petition to include claims for promissory estoppel and breach of the alleged post-termination agreement to extend the stock option exercise period. On May 16, 1996, the trial court granted summary judgment in favor of United Waste holding that: (1) Lemmon take nothing on his claims for wrongful termination and breach of contract; (2) if Lemmon was terminated without cause, United Waste's severance obligations were controlled by the agreement; and (3) Lemmon had no claim to specific performance or money damages concerning the stock options. The trial court noted the summary judgment did not dispose of Lemmon's promissory estoppel claim.

United Waste filed its second motion for summary judgment on July 10, 1996. This motion covered, among other things, Lemmon's promissory estoppel and breach of post-termination agreement claims. The trial court granted the second motion on August 8, 1996, disposing of Lemmon's promissory estoppel and post-termination agreement claims.[3] The parties then entered into a stipulation and tolling agreement to suspend the remaining claims pending appeal. On August 30, 1996, the trial court dismissed without prejudice the remaining claims not adjudicated by either summary judgment motion, allowing Lemmon to bring this appeal.

## III. DISCUSSION

Lemmon consolidates his nine points into one comprehensive argument covering Lemmon's claims for wrongful termination, breach of a post-termination, option-extension agreement, and promissory estoppel. Lemmon asserts summary judgment was inappropriate because fact issues arise concerning his claims that: (1) he was wrongful-

ly terminated because he was fired without good cause when New York law holds that the agreement only provides for termination for cause; (2) he entered into an enforceable contract to extend his time to exercise the stock options; and (3) he is entitled to exercise his stock options under the doctrine of promissory estoppel.

United Waste contends summary judgment was proper as a matter of law because: (1) the agreement provides for Lemmon's termination with or without cause so whether it terminated Lemmon for cause or without cause is irrelevant; (2) Lemmon's promissory estoppel claim fails for lack of detrimental reliance and a clear and unambiguous promise; and (3) Lemmon's post-termination contract claim fails because there is no evidence a contract existed and, even if there was, it would violate the statute of frauds and constitute an unenforceable modification of the employment agreement.

### A. Summary Judgment Standard of Review

In a summary judgment case, the issue on appeal is whether the movant met his summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. *See* TEX.R. CIV. P. 166a(c); *Cate v. Dover Corp.*, 790 S.W.2d 559, 562 (Tex.1990); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979). The burden of proof is on the movant and all doubts about the existence of a genuine issue of a material fact are resolved against the movant. *See Acker v. Texas Water Comm'n*, 790 S.W.2d 299, 301–02 (Tex.1990); *Cate*, 790 S.W.2d at 562; *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex.1965). Therefore, we must view the evidence and its reasonable inferences in the light most favorable to the nonmovant. *See Great Am.*, 391 S.W.2d at 47.

In deciding whether there is a material fact issue precluding summary judgment, all

---

3. The trial court also disposed of a claim for unpaid compensation as of the date of Lemmon's termination.

conflicts in the evidence will be disregarded and the evidence favorable to the nonmovant will be accepted as true. *See Harwell v. State Farm Mut. Auto. Ins. Co.*, 896 S.W.2d 170, 173 (Tex.1995); *Montgomery v. Kennedy*, 669 S.W.2d 309, 311 (Tex.1984). Evidence that favors the movant's position will not be considered unless it is uncontroverted. *See Great Am.*, 391 S.W.2d at 47. The summary judgment will be affirmed only if the record establishes that the movant has conclusively proved all essential elements of the movant's cause of action as a matter of law. *See City of Houston*, 589 S.W.2d at 678.

A defendant is entitled to summary judgment if the summary judgment evidence establishes, as a matter of law, that at least one element of a plaintiff's cause of action cannot be established. *See Science Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex.1997). To accomplish this, the defendant-movant must present summary judgment evidence that negates an element of the plaintiff's claim. Once this evidence is presented, the burden shifts to the plaintiff to put on competent controverting evidence that proves the existence of a genuine issue of material fact with regard to the element challenged by the defendant. *See Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex.1995).

### B. New York or Texas Law?

■ We must first decide whether to apply New York or Texas law to the issues brought on appeal. The trial court never enunciated which state law it applied.[4] Moreover, neither side has been consistent in advocating application of either New York or Texas law. Lemmon's original, first, and second amended petitions sought application of Texas law.[5] On appeal, Lemmon argues New York law applies to the wrongful termination claim and fails to offer an opinion on the applicable law for the post-termination claims. Instead, Lemmon argues reversal is mandated under both New York and Texas law.

United Waste's first motion for summary judgment claimed New York law applied. However, it also claimed the choice of law issue was irrelevant because it was entitled to summary judgment under either state's law. On appeal, United Waste claims the trial court's failure to take judicial notice of New York law dictates that we must presume New York law is the same as Texas law and apply Texas law. In the alternative, United Waste makes the same argument it made in its motion for summary judgment, namely that summary judgment was proper under both state's laws.

■ The question of which law to apply is a question of law for the court and is subject to de novo review. *See Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 421 (Tex.1984); *Salazar v. Coastal Corp.*, 928 S.W.2d 162, 166 (Tex.App.—Houston [14th Dist.] 1996, no writ); *Hull & Co. v. Chandler*, 889 S.W.2d 513, 517 (Tex.App.—Houston [14th Dist.] 1994, writ denied).

■ Under the concept of "party autonomy," we respect the parties' choice of law unless the chosen law has no relation to the parties or the agreement, or their choice would offend the public policy of the state whose laws otherwise ought to apply. *See DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 677 (Tex.1990), *cert. denied*, 498 U.S. 1048, 111 S.Ct. 755, 112 L.Ed.2d 775 (1991); *Salazar*, 928 S.W.2d at 166; *First Commerce Realty Investors v. K–F Land Co.*, 617 S.W.2d 806, 808–09 (Tex.Civ.App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.). This rule has been codified in Texas as:

> [W]hen a transaction bears a reasonable relation to this state and also to another state or nation the parties may agree that the law either of this state or of such other state or nation shall govern their rights and duties.

Tex. Bus. & Com. Code Ann. § 1.105(a) (Vernon 1994).

---

4. Lemmon sought clarification of the applicable law in his motion to reconsider the first summary judgment ruling but the trial court denied the motion, without addressing the applicable law, on the same day it granted the second summary judgment.

5. Lemmon appears to have begun wavering on his belief in the application of Texas law during the summary judgment proceedings.

Texas has adopted Section 187 of the Second Restatement of Conflict of Laws concerning contractual choice of law provisions. *See DeSantis,* 793 S.W.2d at 677. Section 187 provides:

> The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187(1) (1969).

On the other hand, United Waste cites us to Texas Rule of Civil Evidence 202 which states:

> A court upon its own motion may, or upon the motion of a party shall take judicial notice of the constitutions, public statutes, rules, regulations, ordinances, court decisions, and common law of every other state, territory, or jurisdiction of the United States. A party requesting that judicial notice be taken of such matter shall furnish the court sufficient information to enable it properly to comply with the request, and shall give all parties such notice, if any, as the court may deem necessary, to enable all parties fairly to prepare to meet the request. A party is entitled upon timely request to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed. In the absence of prior notification, the request may be made after judicial notice has been taken. Judicial notice of such matters may be taken at any stage of the proceeding. The court's determination shall be subject to review as a ruling on a question of law.

Tex.R. Civ. Evid. 202.

The case law on judicial notice provides that an appellate court, in reviewing the proceedings in the trial court, is limited to the record that is before it on appeal and may take judicial notice only of: 1) facts that could have been properly judicially noticed by the trial judge; or 2) facts that are necessary to determine whether the appellate court has jurisdiction of the appeal. *See Centex Corp. v. Dalton,* 810 S.W.2d 812, 824 (Tex.App.—San Antonio 1991) (op. on reh'g)

(quoting 1 R. Ray, Texas Law of Evidence Civil and Criminal § 185 (Texas Practice, 3d ed.1980, Supp.1990)), *rev'd on other grounds,* 840 S.W.2d 952 (Tex.1992).

Several courts of appeals have held that an appellate court should presume that another state's law is the same as Texas law if the trial court did not take judicial notice of another state's law and the party urging application of another state's law on appeal failed to either request the court to take judicial notice of the other state's law or introduce evidence of the other state's law. *See Ogletree v. Crates,* 363 S.W.2d 431, 435 (Tex.1963); *Creavin v. Moloney,* 773 S.W.2d 698, 702 (Tex.App.—Corpus Christi 1989, writ denied). However, several appellate courts have found this presumption to apply only "in the absence of pleading and proof of the law of a sister state." *See Dawson–Austin v. Austin,* 920 S.W.2d 776, 786–87 (Tex.App.—Dallas 1996, writ granted) (citing *Gevinson v. Manhattan Constr. Co.,* 449 S.W.2d 458, 465 n. 2 (Tex.1969); *Stine v. Koga,* 790 S.W.2d 412, 414 (Tex.App.—Beaumont 1990, writ dism'd by agr.)).

We believe that the agreement provision governs and New York law should be applied to all the claims. First, the contract is explicit that New York law should apply and neither party had contested application of New York law under the *DeSantis* framework. Thus, the wrongful termination claim is governed by New York law. Second, Lemmon's post-termination claims insist that the stock option provisions of the agreement should still be in effect. There is nothing in the record indicating the parties actually changed the choice of law provision during post-termination proceedings. Therefore, we conclude the parties were continuing to operate under their contractual New York choice of law provision. *See Salazar,* 928 S.W.2d at 166. Thus, we will apply New York law.

## C. The Wrongful Termination Claim

■ Lemmon cites *Rothenberg v. Lincoln Farm Camp, Inc.,* 755 F.2d 1017 (2d Cir. 1985), for the proposition that the trial court erred in implicitly finding the agreement made Lemmon an at-will employee. In

*Rothenberg,* an employee filed a wrongful termination claim after being fired before the end of the term set forth in his employment agreement. *Rothenberg,* 755 F.2d at 1018. The agreement contained two clauses covering the parties' termination rights. *Id.* The first clause allowed for termination of the agreement before completion of the stated term for seven enumerated force majeure reasons or "for any other reason" and contained a handwritten addition that required certain notice, severance, and release procedures be followed if such a termination occurred. *Id.* The second clause provided for termination for cause without necessitating notice and payment of severance. *Id.*

The trial court held that the "for any other reason" language rendered Rothenburg an at-will employee despite the presence of the enumerated reasons in the same clause. *Id.* at 1019. On appeal, the *Rothenberg* court found the words "for any other reason" made the seven enumerated force majeure grounds superfluous. *Id.* at 1019–20. In essence, the court found that the agreement was ambiguous and subject to two interpretations. *Id.* at 1020. In doing so, it held that a fact issue existed that precluded summary judgment, namely "whether the parties intended that ... termination could be effected at will or only for a *force majeure* type reason." *Id.* at 1020.

This portion of the *Rothenberg* opinion is distinguishable from the case at hand because the employment agreement at issue is not ambiguous or subject to two interpretations. It clearly provides for two "avenues" of termination. If United Waste terminated Lemmon for cause it was not required to pay severance and the stock options could not be exercised. On the other hand, if United Waste terminated Lemmon without cause it was required to pay three months' pay as severance and hold open the stock options for one month after termination. These terms were clear, concise, and not subject to two interpretations.

The *Rothenberg* court also found that New York law dictates that an employee with a contract for a specified term cannot be terminated without cause before the end of that term despite an express provision in the contract providing for termination without cause. *Id.* at 1020–21 (discussing rule in *Carter v. Bradlee,* 245 A.D. 49, 280 N.Y.S. 368, 370 (1935), *aff'd,* 269 N.Y. 664, 200 N.E. 48 (1936)). At first glance this rule appears to control here. However, the *Rothenberg* court noted two exceptions to the general rule, the second being:

> [w]here the contract provide[s] unequivocally that the employer could terminate the contract without cause but was thereupon obligated to pay a penalty to the employee, termination without cause was held not to constitute a breach if the penalty was paid.

*Id.* at 1021.

This exception, which the *Rothenberg* court takes from *Olsen v. Arabian American Oil Co.,* 194 F.2d 477, 478 (2d. Cir.1952), applies here and is dispositive of this issue. In *Olsen,* the court reviewed a similar employment contract to the one at hand. *Id.* The agreement was clear and unambiguous in allowing for two "avenues" of termination with different duties and obligations owed the employee, depending on whether he was terminated with or without cause before the end of the term of the agreement. *Id.* The court found that the differing obligations, namely the payment of severance if terminated without cause versus no severance if terminated for cause, amounted to a penalty for termination for cause. *Id.* Thus, the lack of mutuality argument addressed in *Carter* was not present and breach of the agreement had not occurred.

The Second Circuit discussed *Rothenberg* and the *Olsen* exception in *International Klafter Co. v. Continental Casualty Co.,* 869 F.2d 96 (2d. Cir.1989). In *International Klafter Co.,* the court reviewed an agency agreement that provided for termination with or without cause in two separate clauses of the contract. *Id.* at 97–98. The court found that the two clauses that provided for two "avenues" of termination were unambiguous and that any other interpretation would eviscerate the without cause provision. *Id.* at 99. The court specifically distinguished its holding in *Rothenberg,* declaring that the agreement in *International Klafter Co.* eliminated the ambiguity found in *Rothenberg* and, in essence, effectuated the remedy the

*Rothenberg* court proposed for enforcement of a dual-termination-ground agreement. *Id.* at 100. Thus, the key was that the agreement in *International Klafter Co.* intentionally set forth two different provisions for termination with cause and without cause. *See id.* We find the case at hand fits squarely within the *Olsen* and *International Klafter Co.* exception.

We turn to Lemmon's argument that United Waste's conflicting accounts of whether the termination was for cause or without cause produces a fact issue. We recognize that there is conflicting evidence on the basis for Lemmon's termination. However, having held that Lemmon was subject to at-will termination under the agreement, we need not decide this issue in order to affirm the summary judgment because Lemmon's claim for severance payments were dismissed without prejudice and will continue after appeal.

Because we have found that Lemmon was not wrongfully terminated, his claim that his stock options are still in effect as a result of his wrongful termination fails. Having found no genuine issues of fact, we affirm the trial court's grant of summary judgment on Lemmon's wrongful termination claim.

### D. The Promissory Estoppel Claim

■ Under New York law, a plaintiff's claim for promissory estoppel must include: (1) a clear and unambiguous promise; (2) a reasonable and foreseeable reliance by the party to whom the promise is made; and (3) an injury sustained by the party asserting the estoppel by reason of his reliance. *See Zucker v. Katz,* 708 F.Supp. 525, 532–33 (S.D.N.Y.1989). "New York law clearly requires unconscionable injury for a court to enforce a promise under the doctrine of promissory estoppel that would otherwise be barred by the statute of frauds." *Id.* at 533. In fact, it is not established that New York "fully embrace[s] the doctrine of promissory estoppel." *Id.*

■ United Waste contends Lemmon's promissory estoppel claim fails for lack of detrimental reliance and lack of a clear and unambiguous promise. Lemmon argues the existence of detrimental reliance in that he did not exercise his stock options and withheld from filing suit due to the oral agreement to extend the option period. We find Lemmon has failed to establish detrimental reliance or "unconscionable injury" as a matter of law.

First, it is undisputed that the stock options: (1) were worthless when Lemmon was fired; and (2) were worthless during the one-month extension period during which Lemmon had to exercise the options if his termination was without cause. We have already found that Lemmon was not wrongfully terminated and that the original agreement controlled. Therefore, as a matter of law, Lemmon could not have refrained from exercising his stock options in detrimental reliance on any alleged agreement to extend the options. The options were worthless during the period he originally had to exercise the options and, therefore, was not prejudiced by refraining from exercising the options. In effect, Lemmon missed out on a windfall; he did not suffer unconscionable injury.

■ We turn to Lemmon's argument that he withheld filing suit in detrimental reliance upon the alleged oral extension agreement. New York law holds that the mere withholding of filing suit is not an "unconscionable injury" or "change of position" as contemplated by the detrimental reliance prong of the promissory estoppel test. *See Tierney v. Capricorn Investors, L.P.,* 189 A.D.2d 629, 592 N.Y.S.2d 700, 703–04 (1993). Here, Lemmon has not pointed to any evidence that his refraining from filing suit prejudiced him in any way. This fact is reinforced by the results of this appeal.

In fact, it appears Lemmon used the threat of suit as a bargaining tool or offensive strategy. The evidence reveals that Lemmon threatened suit less than a month after his termination and filed a claim with the Texas Employment Commission soon afterwards. Later, he repeatedly presented United Waste with various proposed settlement agreements, none of which were accepted. Lemmon filed suit only after his attempts at settlement failed. Thus, we find that Lemmon failed, as a matter of law, to prove an element of his cause of action, namely detrimental reliance upon United Waste's alleged

oral promises to extend the stock option period. We affirm the trial court's grant of summary judgment as to Lemmon's promissory estoppel claim.

### E. The Post–Termination, Oral Stock Option Extension Contact Claim

United Waste contends Lemmon's post-termination, oral contract claim fails as a matter of law because: (1) there is no evidence a contract existed; and (2) even if an oral contract did exist, it would constitute an unenforceable modification of the employment agreement and violate the statute of frauds. Lemmon argues the existence of facts issues as to whether: (1) a contract existed; (2) the alleged oral agreement could modify an original agreement with a no-modification clause; and (3) his conduct acts as partial performance of the oral agreement taking it out of the statute of frauds.

We first look to whether Lemmon established the existence of fact issues concerning his allegation that the parties entered into a valid oral contract to extend the stock option period. A valid contract reflects a "meeting of the minds" where each party communicates its consent to the terms of the agreement. See N.F.L. Ins. Ltd. v. B & B Holdings, Inc., 874 F.Supp. 606, 611 (S.D.N.Y.1995). Here, United Waste presented summary judgment evidence that it never agreed to modify, waive, or extend the stock-option period. Thus, Lemmon must counter this evidence and establish fact issues concerning the existence of the alleged agreement. See Siegler, 899 S.W.2d at 197; Casso v. Brand, 776 S.W.2d 551, 556 (Tex. 1989). He attempts to do so by citing: (1) his own affidavit; (2) the affidavit of Richard Volonino; and (3) the copy of the Milne memorandum and proposed draft severance.

Lemmon contends in his affidavit that "United Waste stated [his] options would be exercisable for an additional period" and that he "relied on the promises and representa-

tions of United Waste made before and after [his] termination concerning the extension of the exercise period to [his] detriment." This is not evidence of an oral contract. Lemmon presents no evidence of when the alleged agreement took place, what it contained, why it was made, or that Milne or Jacobs ever intended to enter into this agreement in the first place. If anything, Lemmon's affidavit reveals that Milne and Jacobs were in the midst of negotiating with Lemmon and had promised a stock option extension would be part of the written draft of the severance agreement if one was ever reached. Moreover, Lemmon's affidavit appears geared towards supporting his promissory estoppel claim, not the existence of a valid oral contract.

Lemmon next contends the affidavit of Richard Volonino, an executive vice president for United Waste, establishes a fact issue as to the existence of an oral agreement. However, Lemmon's brief fails to cite to a particular statement or page number for his contention.[6] A review of Volonino's affidavit reveals Volonino testified that he was unaware of any oral agreement to extend the stock option. Lemmon's counsel was able to get Volonino to say it might have been possible for Lemmon to negotiate an extension of his stock options after termination but that admission falls far short of evidence that an extension was formally offered and accepted.

Lemmon also relies on Milne's memorandum and proposed draft severance agreement to show the existence of an agreement to extend the option exercise period. However, Milne's memorandum and the proposed agreement itself reveal that the parties were merely in negotiations and had yet to reach an agreement. Milne's memorandum specifically states he did not have final authorization to enter into an agreement and that the proposed agreement was "subject to" the comments of other United Waste executives. Lemmon himself crossed out numerous por-

---

6. The only applicable discussion of Volonino's affidavit this court could find was located in Lemmon's response to United Waste's first motion for summary judgment. In that discussion, Lemmon cites two sentences in Volonino's almost 400 page affidavit for the proposition that

Volonino was admitting that "the provisions of the Employment Agreement ... were not clearly defined and were therefore subject to negotiation." We do not agree with Lemmon's interpretation of Volonino's testimony, nor do we believe the testimony created a fact issue.

tions of the draft and subsequently offered multiple proposed draft settlements himself.

We find that Lemmon's proffered summary judgment evidence fails to raise a fact issue concerning whether he and United Waste entered into an oral contract to extend the time period for exercising his stock options. Therefore, we affirm the trial court's grant of summary judgment in favor of United Waste on Lemmon's claim for breach of an oral contract to extend the period for exercising his vested stock options.

### IV. Conclusion

We overrule Lemmon's nine points and affirm the judgment.